USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/28/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────
JULES NGAMBO,

                Plaintiff,

    -against-

CHASE,

                Defendant.
───────────────────────────────

7:20-CV-2224 (NSR)

ORDER and OPINION

NELSON S. ROMÁN, United States District Judge

    Plaintiff Jules Ngambo ("Plaintiff") brings this *pro se* action alleging violations of the Fair Credit Reporting Act ("FCRA") against JPMorgan Chase Bank, N.A., incorrectly sued as "Chase" ("Defendant"). (ECF No. 5, the "Am. Comp."). In an Order & Opinion dated February 2, 2023, the Court dismissed the Am. Compl. and granted leave for the Plaintiff to file a Second Amended Complaint ("SAC"), which Plaintiff did. (*See* ECF Nos. 27, 28). Presently before the Court is Defendant's motion to dismiss the SAC for lack of standing and pursuant to Fed. R. Civ. P. 12(b)(6). ("Def. Mot.", ECF No. 35). For the reasons discussed below, the Court GRANTS Defendant's motion to dismiss in its entirety.

## BACKGROUND

### I. Factual Background

    The following facts are drawn from the SAC and are assumed true for the purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff requested copies of his credit report from Experian, Equifax, and TransUnion (the "Consumer Reporting Agencies") on January 16, 2020. (SAC ¶ 5). Those reports indicated that Plaintiff owed Defendant a "debt/account(s)". (*Id.* ¶ 6). Beginning in December 2019, each of the reports included "erroneous and inaccurate information, including but not limited to incorrect items and amounts . . . ." (*Id.* ¶ 7). Specifically,

1

the reports included incorrect balances Plaintiff owed Defendants. (*Id.* ¶ 8). On January 16, 2020, Plaintiff contacted Defendant via certified mail regarding the "erroneous and inaccurate reporting" in the credit reports. (*Id.* ¶ 1). Plaintiff also disputed the information with the Consumer Reporting Agencies via certified mail, sent on January 21 and 22, 2020. (*Id.* ¶ 12). The Consumer Reporting Agencies also alerted Defendant of Plaintiff's dispute. (*Id.* ¶ 14).

Plaintiff waited thirty days and did not receive a response from Defendant regarding the dispute. (*Id.* ¶ 15). Consequently, Plaintiff sent a Notice of Pending Lawsuit letter to Defendant stating that the latter failed to validate or verify the information at issue. (*Id.* ¶ 17). Defendant did not respond. (*Id.* ¶ 19). Defendant continues to submit erroneous information to the Credit Reporting Agencies, with such information appearing on his credit reports. (*Id.* ¶¶ 20-21). Plaintiff claims that because of the erroneous and inaccurate information on these reports, Plaintiff's credit score and lines of credit have been reduced, his reputation has been damaged, and his "right to increased credit" has been denied multiple times.[1]  (*Id.* ¶ 23).

Plaintiff's second amended complaint asserts claims based on failure to investigate allegedly incorrect information, the reporting information that should be excluded from his credit report, and for failure to validate debt and provide a proof of claim. (*Id.* ¶¶ 24-46). Plaintiff is seeking upwards of $30,000,000 in damages. (*Id.* p. 10).

II.  **Procedural Background**

Plaintiff commenced this action on March 10, 2020 (ECF No. 2). He was granted *in forma pauperis* (IFP) status on March 12, 2020. (ECF No. 3.)

On April 22, 2020, the Court issued an Order to Amend (ECF No. 4.), which dismissed Plaintiff's initial complaint after finding that: (i) Plaintiff's claim under FCRA § 1681s–2(a)

---

[1] Plaintiff states he was denied extensions of credit "about 5" times. (SAC ¶ 42).

against Defendant for allegedly reporting inaccurate information to the credit agencies failed because individuals do not have a private right of action under that provision; and (ii) Plaintiff's claim under FCRA § 1681s–2(b) for Defendant's alleged violation of its duty to investigate the disputed information was inadequately pled, because Plaintiff failed to plead facts as to what information Defendant is erroneously reporting and how Defendant's investigation was deficient. *See Ngambo v. Chase*, No. 20-CV-2224 (NSR), 2020 WL 1940553, at *2–3 (S.D.N.Y. Apr. 22, 2020).

Plaintiff amended his complaint on June 18, 2020. (ECF No. 5.) Defendant moved to dismiss that complaint on August 1, 2022 (ECF No. 20). This Court granted Defendant's motion in an Order & Opinion dated February 3, 2023, which also granted Plaintiff leave to file the SAC. (ECF No. 27).

Plaintiff filed the SAC on February 24, 2023. (ECF No. 28). Presently before the Court is Defendant's motion to dismiss the SAC filed on March 17, 2023. (ECF No. 17).

## **LEGAL STANDARD**

### I. Motion to Dismiss

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint and requires a court to determine whether the facts alleged are sufficient to show that the plaintiff has a plausible claim for relief. *Iqbal*, 556 U.S. at 679. When ruling on a Rule 12(b)(6) motion, a court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g., Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009).

To survive such a motion, however, the plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S.

at 678.  In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense."  *Id*. at 679.  In assessing whether this standard has been met, courts take "all factual allegations contained in the complaint" as true, *Twombly*, 550 U.S. at 572, and "draw all inferences in the light most favorable to the non-moving party [ ]," *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (citation omitted).  A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *id*., and cannot rely on mere "labels and conclusions" to support a claim. *Twombly*, 550 U.S. at 555.  If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id*. at 570.  Notably, however, the "submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).

    **II.**    **FCRA**

The FCRA seeks to ensure the confidentiality, accuracy, relevancy, and proper use of consumers' credit information. *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 150 (2d Cir. 2012). "Consumers have the right to dispute any information reported to a credit reporting agency." *Id*. 150-51.

    **a.**  **Section 1681s-2(b)**

15 U.S.C. § 1681s-2(b) ("Section 1681s-2(b)") imposes certain duties upon "furnishers of information" to consumer reporting agencies, including, pertinently, a duty to "conduct an investigation with respect to [] disputed information" after receiving notice from a consumer reporting agency. 15 U.S.C. § 1681s-2(b)(1).

The FCRA grants plaintiffs a private right of action under Section 1681s-2(b). *Sprague v. Salisbury Bank and Trust Company*, 969 F.3d 95, 100 (2d Cir. 2020) (discussing and dismissing appellants' insufficient claim under Section 1681s-29b)); *see also*, *Comunale v. Home Depot, U.S.A., Inc.*, 328 F. Supp.3d 70, 80 (W.D.N.Y. 2018). "In order to maintain a [Section] 1681s-2(b) claim, a plaintiff must offer evidence that [they] notified the consumer credit reporting agencies of an inaccuracy, those agencies followed up with a notice of a dispute to the furnisher, and that the furnisher failed to correct the inaccuracy." *Holland v. Chase Bank USA, N.A.*, 475 F. Supp.3d 272, 276 (S.D.N.Y. 2020) (cleaned up, internal citation omitted).

As a threshold, a plaintiff must make a prima facie showing of inaccurately reported information to sustain a Section 1681s-2(b) claim. *Id*. (citing *Alvandi v. Fid. Capital Holdings, Inc.*, 677 F. App'x 343, 344 (9th Cir. 2017)). "The overwhelming weight of authority holds that a credit report is inaccurate . . . either when it is patently incorrect *or* when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect on credit decisions." *Id*. (quoting *Gross v. Private National Mortgage Acceptance Company, LLC*, 512 F. Supp.3d 423, 426 (E.D.N.Y. 2021)) (internal quotations omitted, emphasis in original). That is, a plaintiff must show that the information "is open to an interpretation that is directly contradictory to the true information." *Id*.

Once the information is shown to be inaccurate, courts in this District—including this Court—have then required plaintiffs to show that the furnisher "acted in willful or negligent noncompliance with [Section 1681s-2(b)]." *Krausz v. Equifax Information Services, LLC*, No. 21-CV-7427 (KMK), 2023 WL 1993886, at *11 (S.D.N.Y. Feb. 14, 2023) (citing *Pierre v. Wells Fargo Financial National Bank*, No. 21-CV-3141, 2022 WL 4625350, at *2 (S.D.N.Y. Sept. 30,

2022)) (internal quotations omitted); *Ngambo v. Chase*, No. 20-CV-2224 (NSR), at *4 (S.D.N.Y. February 3, 2023).

## DISCUSSION

Counts I and II of the SAC assert claims under 15 U.S.C. §§ 1681s–2(b) and 1681a(d)(2)(A)(i), respectively. (SAC ¶¶ 24-31). The Court construes Count III as a claim under 15 U.S.C. § 1692(g) of the Fair Debt Collection Practices Act ("FDCPA"). (*Id.* ¶¶ 32-46). Defendant asserts that Plaintiff has failed to establish standing under Article III of the Constitution with respect to his FCRA claims and, in any event, Plaintiff has failed to state a claim for which relief can be granted for each of his Counts. (*see* Mem. of L. in Support re: Motion to Dismiss ("Def. Mem.") pp.13-15, ECF No. 37). In response, Plaintiff asserts Defendant is "culpable under the doctrine of *respondeat superior*", appears to state that Defendant's counsel has failed to properly appear on behalf of Defendant, and asserts Defendant's motion is frivolous—in sum, describing Def. Mot. as a "substantive and procedural nullity". (*See* Mem. of L. in Opp. re: Motion to Dismiss ("Pl. Opp."), ECF No. 39).[2] For the reasons discussed below, the Court DISMISSES all of Plaintiff's Counts I, II, and III of SAC with prejudice.

I. **Standing**

   a. **In General**

To pursue any claim in federal court, a plaintiff must have standing—"an essential and unchanging element of the bedrock cases-or-controversy requirement." *MSP Recovery Claims, Series LLV v. Hereford Insurance Co.*, 66 F.4th 77, 86 (2d Cir. 2023) (citing *Lujan v. Defs. Of Wildlife*, 504 U.S. 550, 560 (1992), internal quotations omitted). Standing is an "irreducible constitutional minimum" without which a court may not hear a plaintiff's claim. *Lujan*, 504 U.S

---

[2] Plaintiff also seems to suggest different bases for recovery in his opposition, to wit, a criminal racketeering charge under 18 U.S.C. §§ 1964(a) and (c), and a state law "slander of credit" claim. (Pl. Opp. pp.1-2).

at 560. Standing requires a plaintiff to show: (1) injury-in-fact; i.e., "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) "a causal connection between the injury and the conduct complained of[, with such injury] fairly traceable to the challenged action of the defendant, and not . . . the result of independent action of some third party not before the court"; and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 560-61 (cleaned up). The party invoking federal jurisdiction bears the burden of demonstrating standing. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2207-08 (2021) (citing *Lujan*, 504 U.S. at 561).

   b. **Under the FCRA**

In *TransUnion*, the Supreme Court provided guidance as to the contours of standing when plaintiffs bring claims under the FCRA and, in particular, what constitutes a concrete harm. In addition to, among others, physical and financial harms, plaintiffs may sustain a claim under the FCRA for reputational harm. *Id.* at 2204, 2208. *TransUnion* centered on plaintiffs whose credit reports included a misleading Office of Foreign Assets Control ("OFAC") alert that listed the plaintiffs as "potential match[es]" to entries on OFAC's list of "specially designated nationals"— a list which includes terrorists, drug traffickers, and other serious criminals. *Id.* at 2201. In deciding standing, the Supreme Court drew a distinction between plaintiffs whose credit reports were issued to third-party businesses and those whose reports were only maintained internally by the consumer credit reporting agency. *Id.* at 2208-13. The former had demonstrated they suffered a concrete harm. *Id.* at 2212-13. In reaching that conclusion, the Supreme Court reasoned that when a credit report with the misleading OFAC alert is issued to third parties, the affected plaintiffs "suffered a harm with a close relationship to the harm associated with the tort of defamation." *Id.* at 2208-09.

Further, the Supreme Court rejected the notion that "[t]he mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm." *Id.* at 2210.

### c. Analysis

Plaintiff fails to show standing under the Constitution. Plaintiff alleges negative effects to his credit score and reputation, that his lines of credit have been reduced, and that his right to increased credit has been denied on multiple occasions. (SAC ¶ 23). The Court therefore construes the SAC to state that the allegedly false information has been shared with third parties other than the Consumer Reporting Agencies, as courts in this District have held such agencies were not the third parties that concerned the Supreme Court in *TransUnion*. *See Spira v. Trans Union, LLC*, No. 21-CV-2367 (KMK), 2022 WL 2819469, at *5 (S.D.N.Y. July 19, 2022). Moreover, a showing that inaccurate information has had a negative effect on an individual's credit score can be sufficient to make out standing under *Ramirez*. *Seaman v. National Collegiate Student Loan Trust 2007-2*, 18-CV-1781 (PGG) (BCM), 2023 WL 6290622, at *15 (S.D.N.Y. Sept. 27, 2023). *Seaman* focused on the Plaintiff's "low credit score, which resulted in higher interest rates . . . ." *Id.* (cleaned up). *Seaman* then went a step further, expressly noting that "but for the [inaccurate information] on [plaintiff's] credit report", that plaintiff would have seen 9-10% drop in the interest rate offered—therefore establishing a financial and reputational harm. *Id.*

Even construing Plaintiff's latest complaint liberally, the Court cannot reach a similar conclusion. While the Court must draw a "reasonable inference that the defendant is liable for the misconduct alleged[,]" the paucity of Plaintiff's facts proves fatal. *Iqbal*, 556 U.S. at 678. Under *TransUnion*, Plaintiff fails to show a "concrete harm" providing standing under the Constitution.

Unlike in *Seaman*, Plaintiff fails to draw a direct line from the allegedly incorrect information to the harms alleged. *Seaman*, 2023 WL 6290622, at *15. Here, all of Plaintiff's

alleged harms are conclusory statements. Again, Plaintiff only states that his credit report contains "incorrect items and amounts" with respect to an amount allegedly owed to Defendant but does not specify what those items or amounts are with any particularity.³ (SAC ¶¶ 4, 7-8). Further, Plaintiff does not specify, other than in conclusory fashion, how his reputation has been damaged, the reduction in his lines of credit, or the instances where he was been denied further credit. (*Id*. ¶ 23). Nor does Plaintiff provide any information on his credit score beyond that it has been reduced. (*Id*.). That is, unlike in *Seaman*, Plaintiff fails to show that the allegedly incorrect information caused him concrete harm. In other words, Plaintiff has not shown more than a "sheer possibility" that the Defendant's reporting of allegedly inaccurate information is the source of his harm. *Twombly*, 550 U.S. at 555. Without more and assuming the information in Plaintiff's credit report is incorrect, such ephemeral harms are not fairly traceable to Defendant's allegedly misreported information.

Accordingly, Plaintiff's FCRA claims in Counts I and II are DISMISSED for lack of standing. Even so, the Court will nevertheless consider the merits of each of Plaintiff's claims in the following sections.

**II.   Count I**

Plaintiff's Count 1 is premised upon Defendant's alleged violation of Section 1681s-2(b). (SAC ¶¶ 24-28). Plaintiff fails to state a claim under Section 1681s-2(b) for numerous reasons.

Plaintiff reported the allegedly incorrect information to the Consumer Reporting Agencies, which, in turn, notified Defendant, thus triggering Defendant's investigative obligations under Section 1681s-2(b). (SAC ¶¶ 12, 14); 15 U.S.C. § 1681s-2(b)(1). Plaintiff alleges that Defendant

---

³ Plaintiff also states that he "does not recall" whether the account in question is his, thus at least raising the specter that Plaintiff is simply mistaken regarding the allegedly incorrect information. Regardless, for purposes of this Order & Opinion, the Court construes the SAC such that the account is his and the alleged incorrect information is deleterious. (SAC ¶ 4).

9

"fail[ed] to conduct a proper investigation . . ." and "willfully and maliciously defamed Plaintiff . . . ." (SAC ¶ 25-26).

Plaintiff fails, however, to make the requisite prima facie showing of inaccuracy. *Holland*, 475 F. Supp.3d at 276. Again, Plaintiff only makes the conclusory statement that Defendant furnished "incorrect items and amounts . . . and incorrect alleged balance amounts owed." (*Id*. ¶¶ 25-26). Plaintiff provides nothing further to determine whether the alleged inaccuracies are "patently incorrect or misleading . . . to such an extent that it can be expected to have an adverse effect on credit decisions." *Holland*, 475 F. Supp.3d at 276 (internal quotations and emphasis omitted).

Even if Plaintiff met this threshold showing of inaccuracy, his claim would still fail. Plaintiff does not allege in any specific way willful or negligent noncompliance on the part of Defendant with respect to the investigation mandated by Section 1681s-2(b). *Krausz*, 2023 WL 1993886, at \*11. Plaintiff only states that Defendant "fail[ed] to conduct a proper investigation . . ." into Plaintiff's dispute. (SAC ¶ 25). Without more, Plaintiff's claim is not plausibly pled and cannot be sustained. Therefore, Plaintiff's Count I is DISMISSED with prejudice.

### III. Count II

Plaintiff's Count II alleges Defendant violated 15 U.S.C. § 1681a(d)(2)(A)(i) ("Section 1681a(d)(2)(A)(i)") "by reporting solely transactions and experiences including credit utilization and payments . . ." for slightly over three years since Plaintiff first provided notice of the dispute. (SAC ¶ 29). Section 1681a(d)(2)(A)(i) excludes from "consumer reports" any "report containing information solely as to transactions or experiences between the consumer and the person making the report." 15 U.S.C. § 1681a(d)(2)(A)(i). A "consumer report" is prepared by a "consumer reporting agency." 15 U.S.C. § 1681a(d)(1). A "consumer reporting agency" is defined as "any

10

person which . . . regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties . . . ." 15 U.S.C. § 1681a(f).

Defendant is not a "consumer reporting agency" within the meaning of the FCRA. Creditors that only provide information to consumer reporting agencies do not, themselves, become "consumer reporting agencies" within the meaning of the FCRA. *DiGianni v. Stern's*, 26 F.3d 346, 348-49 (2d Cir. 1994); *Anthony v. GE Capital Retail Bank*, 321 F. Supp.3d 469, 478 (S.D.N.Y. 2017). Plaintiff concedes that Defendant is a creditor and reports information to "national Consumer Reporting Agencies . . . ." (SAC ¶ 2). Further, Plaintiff states that the alleged inaccuracies were contained in reports prepared by the Consumer Reporting Agencies—not by Defendant. (*Id*. ¶ 7). Accordingly, Plaintiff's Count II is DISMISSED with prejudice.

## IV. Count III

It is not immediately obvious what basis Plaintiff premises his Count III on. Plaintiff asserts that he sent three letters to Defendant between February and March 2021 seeking to validate certain debts and claims, to which Defendant neither responded nor validated the debts and claims. (*Id*. ¶ 32-38). Rather, Defendant "kept reporting information, including derogatory information such as late payments, charge off etc., on the alleged and invalid debts in Plaintiff's Consumer Reports . . . ." (*Id*. ¶ 39). Plaintiff then asserts that Defendant's failure to validate those alleged debts renders them invalid, and "therefore [Defendant] failed to do an investigation with respect to the disputed amounts, in violation of 15 U.S.C. [§] 1681s-2(b)." (*Id*. ¶¶ 44-45).

If Defendant's Count III is premised upon Section 1681s-2(b), it fails for the same reasons Count I has been dismissed. Namely, Plaintiff fails to make out a prima facie case that the disputed information is patently inaccurate or misleading and, even if it is so, fails to show

Defendant's willful or negligent noncompliance with Section 1681s-2(b). *See, Holland*, 475 F. Supp.3d at 276; *see also*, *Krausz*, 2023 WL 1993886, at *11.

Plaintiff's emphasis on the validation of debts, however, compels the Court to consider whether he has made a claim out under the FDCPA and, in particular, 15 U.S.C. § 1692g ("Section 1692g"). Section 1692g requires a "debt collector" to, "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt[,] send the consumer a written notice . . ." validating, among other things, the amount of the debt and the name of the creditor to whom debt is owed. 15 U.S.C. § 1692(a). A "debt collector" is defined, in pertinent part, as "any person . . . who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due *another*." 15 U.S.C. § 1692a(6) (emphasis added). "Debt collector" does not encompass "officer[s] or employee[s] of a creditor while, in the name of the creditor, collecting debts for such creditor . . . ." 15 U.S.C. § 1692a(6)(A).

In other words, creditors are generally not subject to the FDCPA. *Vincent v. The Money Store*, 736 F.3d 88, 97 (2d Cir. 2013) (citing *Maguire v. Citicorp Retail Servs.*, 147 F.3d 232, 235 (2d Cir. 1998)). This general rule falls to the wayside when a creditor uses a name other than its own to collect amounts owed to it, thus giving the appearance that a third person is attempting to collect the creditor's own debts. *Id*. (citing 15 U.S.C. § 1692a(6)).

Here, Plaintiff fails to show that Defendant is a "debt collector" for purposes of the FDCPA. For one, whatever the amount allegedly owed Defendant, that amount *is* owed to Defendant, making Defendant a creditor rather than a "debt collector" for purposes of the FDCPA. *See, Lundstedt v. JP Morgan Chase Bank, N.A.*, 853 F. App'x 704, 707 (2d Cir. 2021) (noting a "debt collector" within the meaning of the FDCPA "is in the business of collecting

12

debts owed to another."). Indeed, and as previously noted, Plaintiff concedes that Defendant is a creditor. (*see* SAC ¶ 2). Plaintiff does not otherwise allege that Defendant is seeking to recoup the amounts owed by Plaintiff under a different name, thus giving the impression of a collection action by a third person that would bring it within the meaning of a "debt collector". *See*, *The Money Store*, 736 F.3d at 97; *see also*, 15 U.S.C. § 1692a(6). As such, Defendant is not a "debt collector" under the FDCPA and the obligations imposed by Section 1692g are inapplicable. Plaintiff's Count III is DISMISSED with prejudice.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED in its entirety, and Counts I, II, and III in the Second Amended Complaint are dismissed with prejudice. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 35 and to terminate the action.

The Clerk of Court is further directed to mail a copy of this Opinion and Order to *pro se* Plaintiff at his address listed on ECF and to show service on the docket.

Dated: December 28, 2023    SO ORDERED:
       White Plains, New York

_____
NELSON S. ROMÁN
United States District Judge